# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | |
|---|---|
| MAURICE CAMPBELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:07cv0018 TCM |
| | ) |
| TRAVIS W. WILHITE, UNKNOWN | ) |
| TRAPP, and UNKNOWN JACKSON, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This 42 U.S.C. § 1983 action is before the Court[1] on a motion filed by Defendants, Travis Wilhite, Unknown Trapp, and Unknown Jackson, for summary judgment. [Doc. 35]

Plaintiff, Maurice Campbell, alleges in his pro se verified complaint that Defendants violated his constitutional rights by conducting an abusive strip search, by putting him into a cage and applying pepper spray to him with a large pepper spray applicator, and by refusing to let him shower after the incident. Defendants argue that they are entitled to summary judgment because Plaintiff has failed to establish that they violated any of his constitutional rights.

## Background

For purposes of the instant motion, the following factual allegations are established or in genuine dispute.

---

[1]The case is before the undersigned United States Magistrate Judge by written consent of the parties. See 28 U.S.C. § 636(c).

Plaintiff is a prisoner at Southeast Correctional Center ("SECC"). Defendants Travis Wilhite, Donald Trapp, and Travis Jackson are correctional officers at SECC.

On February 13, 2006, Plaintiff was housed in the B-wing of Housing Unit 2, which is the administrative segregation unit at SECC. Plaintiff had been assigned to administrative segregation on December 9, 2005, after a correctional officer found a 9.5 inch steel rod concealed in his desk.

On February 13, 2006, Defendants were working in Housing Unit 2. That night was shower night. En route to the showers, Trapp escorted Plaintiff from his cell to an enclosed area where the administrative segregation inmates make phone calls. This area is referred to by inmates as the "telephone cage." The telephone cage is small, approximately three to four square feet, and is enclosed by bars. After being placed in the telephone case, Plaintiff was ordered by Trapp to submit to a strip search. Plaintiff refused to consent to being searched in the telephone cage because it was exposed to all the other inmates in the Housing Unit and because other inmates were yelling obscene comments at him. Plaintiff claims that Trapp also made inappropriate comments to him, such as, "you're going to go in that cage and strip out and spread your butt cheeks for the whole wing . . . this is Guantanamo Bay . . . ." Plaintiff said that he would consent to the search if it were conducted in the showers or one of the "strip cages," which are semi-private.

Trapp contacted Wilhite, who was Trapp's supervisor, and informed him that Plaintiff had refused to obey the order to submit to a strip search. Wilhite retrieved an MK-46 pepper

spray applicator[2] and approached the telephone cage. Wilhite informed Plaintiff that his refusal to comply would result in the application of pepper spray. Plaintiff continued to refuse, stating that he wanted to be searched in either the showers or one of the strip cages.

Wilhite then sprayed Plaintiff with the MK-46 for three to four seconds. Plaintiff turned around while being sprayed, so pepper spray was applied to his face, anterior torso, posterior torso, and buttocks. An extremely large amount of pepper spray was dispensed, leaving a thick film covering Plaintiff and coloring his shorts yellow. Shortly after spraying Plaintiff, Wilhite began coughing and left the area.

Approximately two minutes after being sprayed, Plaintiff began to complain that he could not see. Plaintiff also asked to see the nurse and to be taken to the shower. Plaintiff continued to complain and ask for help for about four minutes, until Wilhite returned. Upon Wilhite's return, Plaintiff consented to the strip search.

After the strip search was conducted, Plaintiff was returned to his cell. Defendants did not allow Plaintiff to shower. Upon entering his cell, Plaintiff began to use the water in his sink to wash his eyes and face. Plaintiff's cellmate began complaining that the fumes from the pepper spray were causing him to have difficulty breathing.

---

[2]As shown on the videotape, the MK-46 is approximately as large as a medium-sized fire extinguisher, with a hose and twelve-to-fourteen inch wand attached. As this Court has previously noted, the MK-46 produces high volume streams and is designed for crowd-management. Thomas v. Northern, 574 F. Supp. 2d 1029, 1032 n. 1 (E.D. Mo. 2008).

Plaintiff continued to wash himself in the sink for about ten minutes until the nurse arrived. The nurse ordered Plaintiff to dry himself and stated she would not examine him unless he did so. Plaintiff then dried himself, and the nurse examined him for approximately one minute. When the nurse was finished, she told Plaintiff to continue washing himself in the sink. She did not provide him with any treatment. At this point, the videotape[3] was turned off.

After the incident, Wilhite issued a conduct violation to Plaintiff for disobeying an order.

Plaintiff claims that, as a result of the incident, he experienced burning sensations in his eyes, genitals, and buttocks. Plaintiff claims that he still suffers from symptoms, such as diminished vision and irritated skin.

## Discussion

Summary Judgment Standard. "Rule 56(c) [of the Federal Rules of Civil Procedure] 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" **Erenberg v. Methodist Hosp.**, 357 F.3d 787, 791 (8th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). The initial burden is on the moving party to clearly establish the non-existence of any genuine issue of fact that is material to a

---

[3] A copy of this videotape was one of the exhibits submitted by Defendants in support of their motion for summary judgment and has been viewed by the Court.

judgment in its favor. See **City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.**, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the non-moving party must do more than show that there is some doubt as to the facts. See **Matsushita Elec. Indus. Co. v. Zenith Radio Corp.**, 475 U.S. 574, 586 (1986). "A [party] facing a summary judgment motion cannot 'get to the jury without any significant probative evidence tending to support the complaint[,]'" but must "make a sufficient showing on every essential element of its claim on which it bears the burden of proof." **Buettner v. Arch Coal Sales Co.**, 216 F.3d 707, 718 (8th Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). And, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." **Webb v. Lawrence County**, 144 F.3d 1131, 1135 (8th Cir. 1998). "'Evidence, not contentions, avoids summary judgment.'" **Larry v. Potter**, 424 F.3d 849, 851 (8th Cir. 2005) (quoting Zubaidy v. TEK Indus., Inc., 406 F.3d 1030, 1036 (8th Cir. 2005)). See also **Stanback v. Best Diversified Products, Inc.**, 180 F.3d 903, 909 (8th Cir. 1999) (finding general statements in affidavits and depositions are insufficient to defeat a properly supported summary judgment motion). "A plaintiff's verified complaint is the equivalent of an affidavit for purposes of summary judgment." **Roberson v. Hayti Police Dep't**, 241 F.3d 992, 994 (8th Cir. 2001); accord **Hanks v. Prachar**, 457 F.3d 774, 775 (8th Cir. 2006); **Ward v. Moore**, 414 F.3d 968, 970 (8th Cir. 2005).

Plaintiff's Fourth Amendment Claims.  Plaintiff argues that Defendants violated his Fourth Amendment rights because the telephone cage was exposed to all the other inmates in the administrative segregation unit and because Defendants and the other inmates were making obscene and abusive comments toward him.

It is not disputed that Plaintiff would have consented to being strip searched had the search been conducted in one of the strip cages or in the shower area.

Defendants argue that they had a legitimate security need for conducting the strip searches in the telephone cage.  Defendants say that they could not conduct strip searches in the shower area or in the prisoners' cells because the officers' views are obstructed at those locations.  Defendants do not, however, address Plaintiff's assertion that he could have been searched in one of the strip cages, which are semi-private and intended for the purpose implied by the name.

"The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application.  In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails.  Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." **Bell v. Wolfish**, 441 U.S. 520, 559 (1979).  Generally, strip searches should be conducted in an area as removed from public view as possible without compromising legitimate security concerns.  E.g.,

**Franklin v. Lockhart**, 883 F.2d 654, 656-57 (8th Cir. 1989). Strip searches conducted "in an abusive fashion . . . cannot be condoned." **Bell**, 441 U.S. at 560.

In this case, a genuine issue of material fact exists as to the reasonableness of the location where Plaintiff was strip searched. Defendants do not deny that they strip searched Plaintiff in full view of the rest of the administrative segregation unit. And, Defendants have not addressed Plaintiff's contention that there existed a strip cage or cages which would have afforded Plaintiff greater privacy and which were designed for conducting strip searches. Additionally, a question of material fact exists as to whether Trapp made abusive comments towards Plaintiff when he ordered him to consent to a strip search.

For the foregoing reasons, Defendants are not entitled to summary judgment on Plaintiff's Fourth Amendment claims.

<u>Plaintiff's Eighth Amendment Claims.</u> Plaintiff further argues that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment when they applied pepper spray to him because there was no objective need for force, because the amount of force used was disproportionate to any possible threat, and because Defendants could not have perceived themselves to be in any danger from Plaintiff.

Defendants counter that the use of force was necessary because Plaintiff refused to submit to a strip search, thereby creating a "dangerous and potentially disruptive situation" on a night when all the inmates were being strip searched and their cells were being searched. Many of the other inmates were agitated because of the way the officers were conducting the strip searches. Defendants note that Plaintiff was confined to administrative

segregation for possession of dangerous contraband, i.e., a 9.5 inch steel rod. Defendants further argue that the videotape confirms that the use of force was not excessive because Wilhite administered only one burst of pepper spray to Plaintiff's torso. Finally, Defendants argue that Plaintiff's discomfort was de minimis because after the incident he was taken back to his cell where he had access to soap and water. Defendants do not dispute that Plaintiff was not allowed to shower.

"The Eighth Amendment bars correctional officers from imposing unnecessary and wanton pain on inmates, regardless of whether there is evidence of any significant injury." **Johnson v. Blaukat**, 453 F.3d 1108, 1112 (8th Cir. 2006) (citing Hudson v. McMillian, 503 U.S. 1, 9 (1992)). "Officers may reasonably use force in a 'good-faith effort to maintain or restore discipline' but may not apply force maliciously and sadistically to cause harm.'" **Id.** (quoting Hudson, 503 U.S. at 7). "The test for reasonableness or good faith application of force depends on 'whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury.'" **Id.** (quoting Treats v. Morgan, 308 F.3d 868, 872 (8th Cir.2002)).

Determining whether an application of pepper spray implicates the Eighth Amendment requires a fact-specific inquiry as to the extent of pain inflicted upon the inmate. **Lawrence v. Bowersox**, 297 F.3d 727, 731 (8th Cir. 2002); **Jones v. Shields**, 207 F.3d 491,

495 (8th Cir. 2000). The use of pepper spray must be "reasonable under the circumstances" and must not be "punitive, arbitrary, or malicious." **Treats**, 308 F.3d at 873. The courts are more likely to find that the use of pepper spray was reasonable if the correctional officer could have feared for his or her safety. **Id.** The courts are less likely, however, to find the use of pepper spray reasonable where the prisoner posed no threat to the security of the institution. **Id.** at 873-74. "Not every instance of inmate resistance justifies the use of force, and use of pepper spray will not be justified every time an inmate questions orders or seeks redress for an officer's actions." Id. at 872-73 (citations omitted). In this context, it is paramount that the Court "'view the facts and the inferences to be drawn from them in the light most favorable to [Plaintiff].'" **Johnson**, 453 F.3d at 1113 (quoting Wells Fargo Fin. Leasing, Inc. v. LMT Fette, Inc., 382 F.3d 852, 855-56 (8th Cir. 2004)).

In this case, a material question of fact exists as to whether using a riot-type pepper spray dispenser on an inmate confined within the small area of the telephone cage was reasonable under the circumstances. It is undisputed that Defendants were not in any immediate danger from Plaintiff. And, as stated above, the MK-46 pepper spray dispenser delivers an extremely large amount of pepper spray in short bursts. While it is possible that Plaintiff's recalcitrance may have posed some potential threat to the security of the institution, justifying some use of force, a question of fact exists as to whether a three to four second burst of pepper spray at short range from an MK-46 was disproportionate to the potential threat posed by Plaintiff.

Additionally, it is extremely troubling that Defendants did not allow Plaintiff to shower after the incident. Indeed, Plaintiff claims that he was not allowed to shower until three days later and that the pepper spray continued to harm him as long as it remained on his skin and in his eyes. By refusing to allow Plaintiff to shower, Defendants effectively continued the use of force against Plaintiff for long after he complied with their orders and was placed back in his cell. Defendants emphasis that Plaintiff had access to a sink with soap and water in his cell. However, on the basis of the record before the Court, it is not apparent that placing Plaintiff in a confined space with a small sink allowed him to adequately clean the pepper spray off of his body. Under these circumstances, a question of material fact exists as to whether Defendants' actions were punitive, arbitrary, or malicious. As a result, the Court will deny Defendants' motion for summary judgment as to Plaintiff's Eighth Amendment claim for excessive use of force.

Plaintiff's First Amendment Claims. Plaintiff alleges in his complaint that Defendants violated his First Amendment rights by ordering him to submit to a strip search. The First Amendment, however, does not apply to strip searches.[4] Defendants will be granted summary judgment as to Plaintiff's First Amendment claims.

Plaintiff's State Law Assault Claim. Defendants argue that Plaintiff has failed to state a prima facie claim of assault under Missouri law. Defendants further argue that even if

---

[4]The Court notes that Plaintiff does not allege that he was stripped search in retaliation for any activity protected by the First Amendment or that the strip search violated any religious principles.

Plaintiff has stated a prima facie case of assault, they are entitled to official immunity under Missouri law.

Under Missouri law, the elements of an assault claim are: "(1) defendant's intent to cause bodily harm or offensive contact, or apprehension of either; (2) conduct of the defendant indicating such intent, and (3) apprehension of bodily harm or offensive contact on the part of the plaintiff caused by defendant's conduct." **Phelps v. Bross**, 73 S.W.3d 651, 656 (Mo. Ct. App. 2002).

In this case, Defendants argue that Plaintiff has failed to show that Defendants intended to cause offensive contact or that he feared offensive contact from them. The Court rejects this argument. Wilhite clearly intended to spray Plaintiff with pepper spray from an MK-46. And, after he was sprayed, Plaintiff was clearly in apprehension of bodily harm, as evidenced by his calling for a nurse and complaining of intense discomfort. Consequently, the Court finds that Plaintiff has stated a prima facie case of assault under Missouri law.

"Under Missouri law, [t]he doctrine of official immunity shields public officers and state officials from civil liability for injuries arising out of their discretionary acts, functions, or omissions performed in the exercise of their official duties." **Hawkins v. Holloway**, 316 F.3d 777, 788-89 (8th Cir. 2003) (alteration in original) (quotation omitted). "Generally speaking, discretionary acts are those acts involving the official's exercise of reason in developing a means to an end, and the employment of judgment to determine how or whether an act should be performed or a course pursued. [H]owever, official immunity does not

apply where the official's discretionary act was undertaken in bad faith or with malice." **Id.** at 789 (first alteration in original) (internal citation and quotation omitted).

As stated above, there exists a genuine issue of material fact as to whether Defendants acted maliciously in applying such a large amount of pepper spray to Plaintiff's body and by prohibiting him from taking a shower afterwards. Therefore, on the record now before the Court, Defendants are not entitled to official immunity under Missouri law.

<u>Qualified Immunity.</u> "[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" **Pearson v. Callahan**, No. 07-751, 2009 WL 128768, at *6 (U.S. Jan. 21, 2009) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)). It "is an immunity from suit rather than a mere defense to liability." **Id.** at *6 and *10 (internal quotation marks omitted) (quoting <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985)). To determine whether a state actor is entitled to qualified immunity, the Court must resolve two questions: first, whether the official deprived the plaintiff of a constitutional right, and second, whether that right was so clearly established as the time that a reasonable official would have understood that his or her conduct was unlawful under the circumstances. **Kahle v. Leonard**, 477 F.3d 544, 550 (8th Cir. 2007). In its recent **Pearson** decision, the United States Supreme Court left to the discretion of the lower courts the order in which a court addresses the two steps involved in the analysis of a claim of qualified immunity. 2009 WL 128768 at *13-14.

The Court has determined that a genuine issue of material fact exists as to whether Defendants violated Plaintiff's Fourth and Eighth Amendment rights. Defendants are not, therefore, entitled to qualified immunity unless Plaintiff's asserted constitutional rights were not clearly established at the time of the incident.

At the time of the incident, it was clearly established that abusive strip searches are impermissible and that strip searches should be conducted in an area as removed from public view as possible without compromising legitimate security concerns. See **Bell**, 441 U.S. at 560; **Franklin**, 883 F.2d at 656-57. It was also clearly established that prisoners have a right to be free from punitive, arbitrary, or malicious applications of pepper spray. See **Treats**, 308 F.3d at 873. As a result, Defendants are not entitled to qualified immunity.

## Conclusion

For the reasons set forth above, Defendants shall have summary judgment on Plaintiff's First Amendment claims, but not on his Fourth and Eighth Amendment claims and not on his state law claims for assault. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment is **GRANTED** in part and **DENIED** in part as set forth above. [Doc. 35]

**IT IS FURTHER ORDERED** that, on the Court's own motion, Eric Bohl, with the Limbaugh Firm, 407 N. Kingshighway, Suite 400, Cape Girardeau, MO, 63702, is appointed to represent Plaintiff in the trial of his remaining claims. The Clerk of the Court shall provide Plaintiff's newly-appointed counsel with a complete copy of the court file at no cost.

**IT IS FINALLY ORDERED** that a status conference shall be held with counsel for both sides on **March 10, 2009**, at **9:00 a.m.** in chambers to discuss a trial schedule.  Counsel may, on notice to the Court, participate by telephone.


/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 5th day of February, 2009.